Good morning, Your Honor. Reginald Brown on behalf of Appellant and Cross Attorney George Clinton. I'd like to reserve three minutes for rebuttal. As you know, this is a case that involves a motion for summary judgment. Were there genuine issues of material fact in this case? The answer is clearly yes. The principal question in this case is the party's intent with respect to ten tolling agreements. The question is whether the party's intent was an extension of time for the audit, for objections, and an extension of time to bring an action. That is a question that should have been left for the jury. However, if you look at the tolling agreements here, there's three different issues with the tolling agreements. There's the question of the audit. The audit is to determine whether there are any objections to the royalty statements. The other reason for the tolling agreement was to toll the time within which to make those objections. Now, there are two limitation periods here, correct? The contractual three-year limitation period and the statutory four-year limitation period. Correct? Well, the agreement, there is a statutory four-year period, but the agreement cut short the period. So it was three years? Yes. Okay. So isn't it a fact that with one exception, all of these tolling agreements that are the crux of your case were made after the passage of the contractual limitations period? No, Your Honor. The first tolling agreement was entered into on September 26, 2003. The first royalty statement was deemed rendered in September, the end of September of 2003. So the three-year period applies to the audit. It applies to the objections. Okay. But except for that tolling agreement, weren't all the others after the three-year period? All the other tolling agreements, weren't they all, didn't they all come after the three-year period, the three-year contractual period? The tolling agreements were consecutive, and before any of them expired, there was always a new tolling agreement in place. My understanding, and you may be able to educate me, is that if the first tolling agreement is valid and operates to extend not only a statutory statute of limitations, but a contractual limitation period, and we're supposed to read each tolling agreement in the same way, we just have a continuing series of extensions. Absolutely, Your Honor. That's the argument? Yes. Let me ask you this. The statute of limitations language comes in these letters. But as I read those letters, they're designed to be memorializations of an oral contract. That is to say, I don't read the letters as themselves constituting a contract. That is to say, they seem to have reached some agreement for tolling, and then we get these letters that say, okay, here's what we agreed to do, written by the defendants. And I regard the letters not as the agreement, but rather as evidence of the oral agreement for which they purport to memorialize. With respect to some of them, that would be a correct assessment. Sometimes you had correspondence going back and forth. A lawyer might write a letter asking for more time, and Universal would respond with a letter granting that extension. And I don't think there's evidence in the record of many oral communications. I mean, there may have been some. Well, maybe I should say this is evidence as to what the contract is. I see no signed contract here for extension of time. All I see is exchange of correspondence, and the letters that contain the term statute of limitations are all letters by the defendants purporting to constitute the agreement. In part. There's correspondence, for example, from Mr. Clinton's attorney, Gail Lewis, toiling in with respect to the 8th, 9th, and 10th tolling agreements. That correspondence seems to say we're talking about the contractual period. Yes. But if you look at the letters in context, there was an audit, and there were questions about the audit. You may not be understanding the drift of my questions. These questions are intended to be favorable to your client. I understand. Yes, it was about the contractual limitation. Okay. But these letters were written by lawyers to lawyers, correct? I believe that the business affairs people at Universal were attorneys. I'm not certain of that, though. Okay. Well, I think that's how I read them anyway.  Now, don't you have to show that there's nothing patent about any ambiguity in that term? Statute of limitations, you would agree, would be understood by lawyers and for business people, if not lawyers, as just that, a statute of limitations, not a contractual limitation. Would you agree with that? Not at all, Your Honor. What else does it mean, a statute of limitations?  I understand entirely, Your Honor. The point here is you have to look at the context of what the parties were attempting to do. In the beginning they So you have to show a latent ambiguity, don't you? I think there is a latent ambiguity. Okay. Well, okay. Do you agree there's no patent ambiguity? No, there's not a patent ambiguity. Okay, fine. Okay. So then explain to us, if you could, what evidence there is in this record to show a latent ambiguity. The evidence is this. Number one, if you look at the agreement, we have a contractual limitations period. You have a four-year statute of limitations for breach of contract. That four-year statute did not apply to this agreement. So when the parties are drafting letters that refer to a statute of limitations, they could not have been referring to the traditional statute of limitations, but they had to have been referring to the contractual limitations period. The other evidence is if you look at each of the ten tolling agreements, in almost all of them there's reference to audit tolling. Clearly what the parties were attempting to do was to freeze things while the audit was to be completed, to freeze things while they talked about resolution of their dispute. Now, if you look at the timing of when the first tolling agreement was entered into, it was four days prior to the expiration of the time to object for the first royalty period. When the other excerpts, do you have a copy of that tolling agreement in the excerpts? Yes. The first tolling agreement? Yes. What date was it? This is at page 79, the date of September 26, 2003. Okay. 79? Page 79. Is this the one let aside by Giselle Jacobs? Yes, Your Honor. Okay. Now, this is the first tolling agreement. This agreement was entered into four days prior to the expiration of the time. Of the contractual period, correct? Of the contractual period for the audit, the objection, and the time to bring an action. Okay. Now, would it make any sense to enter into this agreement and in essence say you have time to audit, you have time to object, but you only have four days to bring an action? It just doesn't make any sense if you're looking at the intent of the parties. This is, of course, a case in federal court. Do the California parole evidence rules apply in federal court when we're construing a California contract? I believe so, Your Honor. And can you describe the California parole evidence rules or rule? Well, here, if you take a look at the Wolfe case, where you have a latent ambiguity. Number one, the court as a matter of law has to determine whether an ambiguity exists. The second step in that analysis is receiving parole or extrinsic evidence to determine the intent of the parties. Do we need to look or are we allowed to look to extrinsic evidence in deciding whether there is an ambiguity? The question of the ambiguity is a question of law. You just have to look at the four corners of the agreement to determine whether there's an ambiguity. Once you make that determination, then... So you don't look at anything extrinsic in deciding whether there's an ambiguity? I'm just trying to understand what you're saying. I believe it's a simple question of law based on the four corners of the agreement, but I'm not absolutely certain about that. You said, look, this thing was signed four days before the expiration of the contractual period. Now, that's extrinsic to the four corners of the document. Can we rely on that or is that something that we can look at in deciding whether this is ambiguous? I believe you can. Okay, is that consistent with what you said to me earlier when I asked you the question? You can change your mind. I'm not... The thing is, I'd have to take another look at Wolf, but Wolf sets forth with the rule. Can you give me... Obviously, the September 6th letter is in response to a letter or in response to some conversation. Can you point me to what the September 26, 2003 letter is responding to? There was prior correspondence. For example, there's a 2002 letter that one of Mr. Clinton's attorneys wrote where there was an intent to audit. I don't think there's anything in the record immediately prior to the September 26, 2003 statement. Well, what I'm interested in is I'm reading now the September 26 letter, and this is essentially the language that keeps getting repeated in all the subsequent letters. This letter will confirm that IDJ, that is to say Def Jam, has agreed to a prospective tolling of the statute of limitations. In other words, this is not itself the contract. This is a confirmation that we have already agreed to something. And I'm trying to figure out, okay, what do we have in the record that will tell us what they agreed to? That is to say, this does not strike me as the contract. This strikes me as evidence of the contract. So what else do we have in the record that tells us what the contract is? All that's in the record with respect to this tolling agreement is this letter. I mean, it's not clear if there were telephone conversations before. This does not appear to be in response to any particular written correspondence. At least it's not in the record. But you've got a lot of evidence that you want us to look at that tells us how we should construe this. Yes, Your Honor. Do you agree with me that this is itself not the contract? No, this is the agreement. Oh, no. It confirms the understanding of the parties. I understand. Okay. Can you refer to the next letter, please, on page 81? Because it has language that really mystifies me. Maybe your opponent can explain this because they wrote it. But first of all, it again refers to a statute of limitations. That was due to expire on March 26th of 04. This was written after that date, which was the cause of my earlier question to you. And it said we've agreed to extend the tolling agreement, again referring back to the statute of limitations. And then there's a sentence that I don't understand at all. This tolling agreement does not extend or revive any limitations period that has already expired as of the date hereof and does not limit any defense that may already exist. What does that mean? Well, one, I want to make sure that the reference here to the expiration date is accurate. Well, it's accurate because the other letter you're referring to on page 79 says this tolling agreement will expire on March 26th of 04. So it's accurate. What they're saying is if the period's already come and gone, which April 2nd, I think we can take judicial notice, is later than March 26th, they are not waiving or they are not extending it beyond that date or waiving any defenses they might have until that date. So hasn't it come and gone? Hasn't this train sort of pulled out of the station already? Well, the thing is, if this letter is accurate, that may well be the case for a particular statement. But that language is repeated in all of the other letters. The language is repeated, but the dates are different. Sure. And they're not waiving anything that has already expired. And all the rest of those dates postdate the limitations period that are referred to in the previous letters. You're saying all the dates? I'm not saying anything. I'm looking at the record. Because the next letter is, this one goes to June 26th. The next letter is June 25th. But it's still after the limit. It's after the original tolling agreement extension to March 26th of 04. They all come after that date. And they say we're not, this does not extend to revive any limitations period that has already expired. So you have to go back to that earlier date, don't you? And basically saying these, what else could this mean but the statute of limitations since the contractual limitations period has already expired? And they're specifically reserving that. Here the statute, the ordinary four-year statute of limitations period is not applicable. I don't know if there had been telephonic communications prior to these confirmation letters. I think you should talk about standing, too, if my colleagues agree. Do you have anything to say about standing? Yes. First of all, I think it's clear that Mr. Clinton is the real party in interest. If you look at Rule 17, he has standing. He has a direct interest in these agreements. If you look at the language of the production agreement, if you look at the inducement letter, what the agreement says is that the agreement is about the production and artistic services of George Clinton. Sure, but that inducement letter says, I shall look solely to the producer, which was Pfunk, his company, for any and all royalties. So now you're saying that you're looking to, that Mr. Clinton is looking to these defendants for royalties. Isn't that contrary? Not at all, Your Honor. If you look carefully at the language in the inducement letter, the reference there is to royalties payable by me, meaning Mr. Clinton. It has nothing to do with royalties payable to Pfunk. And I think more importantly here, if you understand why inducement letters exist to begin with, it's the intent of the parties that is at issue here as to whether there was an intent to bar Mr. Clinton from stepping in the shoes of his company, Pfunk. Were any royalties ever paid by these defendants to Mr. Clinton? There was a royalty check in, I believe, 2001, after a long period of no royalties at all. Okay, and to whom was that payable? Was that payable to Pfunk, or was that payable to? I believe those royalties were payable to George Clinton. Okay. So he does business under this loan ad company called Pfunk, which was defunct in 1982, right? Well, for all intents and purposes, it was. Well, it was for failure to pay taxes, as I understand it. So this fiction of Pfunk continues for decades, it seems, even though the company no longer exists. How can you explain that? Maybe I'm learning a lot about the entertainment industry out here in California, but help me out. I didn't represent Mr. Clinton at that time. Entertainers sometimes have different entities, a loan out company. They may have one deal, one company for one deal. They may discontinue operating that company, but royalties may continue to come in, in connection with a certain agreement. I think we may be able to take judicial notice that entertainers are not always the most careful businessmen. That has been my experience. I may not speak of Eddie's particular case, but it does happen. It must make the lawyers out here very happy. The litigators, anyway. Okay. Well, thank you. Thank you. We'll hear from opposing counsel. Your Honors, my name is Russell Frackman. I represent the Appellees and the Cross Appellants. I think our position is pretty simple, Your Honors. There is a two-step analysis that has to take place here. Whether there is a patent ambiguity in the word statute of limitations, and there clearly is not, and that's been conceded. And whether there is any parole evidence that would create a latent ambiguity. You know, to the point of Judge Fletcher's question about this letter on page 79, it's not a contract. It's not signed by both sides. It doesn't purport to be a contract. What it looks like is a one-size memorialization or summary of something else, which is the contract. So do any of those rules as to extrinsic evidence even apply to this? I think the rules would apply. I think to the extent there is any. Why? Well, the rule is the rule. If you and I have a handshake deal, and I say, I'm going to buy your dog, and we have an agreement that before you sell me the dog, it will be neutered and all the shots will be clear. And then you send me a letter saying this is to memorialize our agreement that I'm just selling my dog for $200. Would that be the contract? I suppose. Would you allow that to be the contract? Or could I come back and say, well, wait a minute. We had a deal. There was a letter. I didn't sign the letter. It was sent to me. What the deal was is the agreement that we had orally, which involved the shots and the neutering and, you know, all those things. Why isn't that the deal? I think I have three responses to that, Your Honor. You know, I'm always underwhelmed when lawyers come up with three responses because it suggests to me that the one response is not good enough. I'm always much happier when they say, here's the answer to that, Your Honor, and then bat it out of the park. But if you need three responses to dribble that over my baseball analogy's family. So go ahead. Give your speech. I'm hesitant to say I have three good responses. The first one, Your Honor, is we're dealing with a tolling of the statute of limitations under the Code of Civil Procedure that must be done in a writing signed by the party to be charged. And that's what presumably we have here. Well, but we're not talking about the statute of limitations right now. We're talking about the contractual agreement or the contractual limitations period. Well, you talk about the statute of limitations, but let's talk about the contractual tolling. That doesn't give an idea, does it? I don't think it does. But there's no evidence of any oral agreement tolling the contractual limitations period. Well, here it is. This is the book of firm that has agreed something in the past. This is a letter from one side, signed by one side only, saying something has happened in the past. Right. So this isn't the agreement. Clearly it says it's not the agreement. This is just one side's characterization of the agreement. So it's don't have to look at the agreement. It doesn't characterize anything about the contractual limitations. And there's no evidence of any oral agreement tolling the contractual limitations period. Oh, but you see, there you're wrong. There is a fair amount of evidence. I mean, if we deal with this in terms of parole evidence rule, if we were to assume, for example, that this is the contract, which I think it is not, but if it were the contract, we would then look to the other evidence, some of which Mr. Brown has already given us, as to why, you know, it doesn't make any sense that the parties would have been extending the statutory period. The timing and all the negotiations and so on make it pretty obvious that they thought, at least on Mr. Clinton's side, he thought that he was extending the contractual period. So there is evidence. You can't say there's no evidence that they were talking about something other than the contractual period. Well, Your Honor, it's something that I think is key here, at least on Mr. Clinton's side, that there has to be a meeting of the minds. Well, I understand that. There is no evidence. Let me speak for a moment, then you can respond. Yes, of course, there does have to be a meeting of the minds. And this letter references a meeting of the minds. This letter memorializes your client's vision of this, whether taken in good faith or not at that time, I don't know. But we can't look at only this for evidence as to what the meeting of the minds was. Do you agree with me that we can't look only to this to see what the meeting of the minds was? Certainly, if there was something else admissible to look at. And I would suggest to the Court if you look at it. So we are now to the point of saying, this is not the contract. And now we just have to look at everything in the record that tells us what the contract was. Are you with me to that point? If one assumes that this is not the contract as opposed to a tolling provision, a tolling agreement. Well, that's right. I mean, there is a contract to do some kind of tolling. Correct. And I think you're now agreeing that this letter is not the contract with respect to the tolling agreement. It's a description of the contract by your client. Well, it's also a description of the contract by the other side, Your Honor. If you look at page 44 of the excerpts of record, it's a letter from Mr. Clinton's counsel. We are writing on behalf of Mr. George Clinton. And I'm reading from the beginning of the letter, Your Honors. And related entities on whose behalf we propose a three to six month extension of the prospective tolling of the statute of limitations. And then he uses the word statute of limitations again in the next sentence. That sounds like there's more evidence. There we go. Evidence that they told the statute of limitations. But this is 2005. Correct. Whereas this is 2003. So it must be speaking of a different. No, Your Honor. They refer, these letters refer over and over again to a progressive tolling of the statute of limitations. If you look at the nine different letters, there is at least in one of them, I believe. Words to that effect. It says, alternatively, we will commence an action to preserve the statute of limitations for the audit period. Right. So it says statute of limitations for the audit period. It doesn't make any sense, statute of limitations for the audit period. Because there is no statute of limitations for the audit period. The audit period is only a contractual limitation. Yeah, these people seem to have their own special brand of English. Well, that's. This is Hollywood. Well, this is a legal term, Your Honor. Mr. Clinton had three lawyers over the course of this period of time. There are letters from three different lawyers in here. But can you explain to me what statute of limitations for the audit period means? It means the statute of limitations with respect to any claims that are uncovered during the audit. Or alternatively, it means the three years in which to audit the contract, which is a different provision than the objection provision and the limitations provision. Now, Your Honor, I could speculate why they asked for that, Your Honors. And I would speculate a couple of things. Number one, that they didn't think of the contractual limitations provision. Or number two, as their testimony, basically the only parole evidence that they put in, their lawyer, Ms. Zisk, says, I assumed, because it said statute of limitations, that it included contractual limitations. But they're referring in October of 2005 to preserving the statute of limitations for the audit period, as Judge Kaczynski just said, on or before the expiration of the current tolling period. Correct. So the current tolling period had already passed. Not under statute of limitations. No, under the contract it had already passed. 2005, it would have gone back to 2002. I think it would have passed for all but one, perhaps, at that point, the contractual limitations period. So what else could they have been referring to? Statute of limitations. The fact of the matter is they were wrong. That does not make a contract. Let me look at it this way. As I read what the district judge did, the district judge read the letter, or the series of letters, all of which refer to the statute of limitations, said, that's plain on its face. You lose. End of story. I don't think so, Your Honor. Although I don't think it matters, because this is obviously the no vote review. If you look at that footnote, first of all, the reason that What footnote are we talking about? Where the district judge talks about this. It's in the excerpts. Page 17. Footnote, I think it's 5. You'll note. I'm sorry. I'm slow. Okay. I'm looking at footnotes. You'll note, Your Honors, that first of all, this is relegated to a footnote, and second of all, as the district judge says, Putin has impliedly argued that his claims for unpaid royalties were told. This argument fails since the tolling agreements covered tolling of the statute of limitations. The reason that the district court was so terse was that if you look at the record, they made this argument in about three lines. Well, that may be right. And the district court Excuse me. Can I talk for a minute? Yes. As I read the district judge here, he says the tolling agreement covered tolling of statute of limitations, makes no mention of contractual limitations period, thus the plain language demonstrates did not apply. In other words, as I read that, the district judge is looking at these letters, treating them as the contract, saying they say statute of limitations. That's plain. End of story. Isn't that what the district judge is doing here? Well, two things. I think he's doing a little bit more. First of all, he cites to the Zist Declaration where I believe this parole evidence, which they say is, by the way, is the only extrinsic evidence that goes to the first five tolling periods. And that's Ms. Zist's declaration in which she basically just talks about uncommunicated intent. Yeah, that other one, I think that was actually an actual contract, wasn't it? No, she's talking about one of the tolling agreements. Defendants have produced evidence of a tolling agreement made between Clinton and another country. Oh, the other one. Yes, Your Honor. That was extrinsic evidence that we produced. But that extrinsic evidence, was that itself a genuine contract? Was that the contract itself? Well, it's in the record, Your Honors. Okay. I'll put my nose in that. That would be useful. Page 112 of the supplemental excerpts. Oh, no, I'm sorry. That's the wrong page. Page 23 of the excerpts. I apologize. Page 23 of the excerpts of record? Yes. Yes, sir. Okay. Hang on a second. Okay.  And it's called a limited tolling agreement. Yes, Your Honor. I'm with you. This is what I thought it was. This is a genuine contract. This one's signed by both sides. And that means when he enters into a genuine contract, he knows how to say tolling with respect to contract. In a letter written by you or your client, well, they don't say it. But that's not the contract. I don't know what they said in the contract. Well, that's my point, Your Honor. Well, but that's my point, too. Okay. That is to say, this is evidence that when you actually have the lawyers agreeing on a contract, they say contractual tolling period. However, when your client writes a letter purporting to memorialize a contract already performed, he says statute of limitations. Well, that's evidence that the actual underlying contract might have said statute of limitations, but that's only evidence. And the evidence here says, oh, when I enter into a contract, actually, I say contractual tolling period. So I'm not sure that evidence cuts in your favor. It may not cut very strongly in his favor. I don't see why it doesn't, Your Honor, to be honest with you. We write the letter. They don't come back and say, wait a minute, this does not confirm our agreement. And that is indeed a point in your favor. And they don't come back here or to the district judge with a declaration from Ms. Zisk saying this was our oral agreement. In fact, her declaration evidences just the opposite. So they have no evidence here, and it's there. However, we've made a prima facie case clearly that the contractual limitations period expired. And there is no parole evidence, or as Your Honor put it, there's no evidence of another contract out there. So you're basically saying there was no meeting of the minds here at all about this. On contractual limitations. So, therefore, it goes back to the original contractual limitations period. Yes, sir. On the contract side, there was a tolling of the statute of limitations, but yes, sir. And that's what the district court found. Can you answer my question that I posed to Mr. Brown about what this means in these letters beginning with page 81 of the volume 2 there? This tolling agreement does not extend or revive any limitations period. It has already expired. It goes on from there. You see what I'm talking about? I'm looking at the April 2nd letter. I think ‑‑ I do not read it as saying, frankly, that the contractual limitations period has expired at that point. Well, the other agreement said we're going to extend a tolling ‑‑ we're going to toll the statute of limitations until June 26, 2004. And this comes in April of 2004, so it comes before that. And it says we won't ‑‑ we're not waiving any limitations period that has already expired. I'm sorry, what limitations period has already expired? I don't think there was a limitations period that had expired. I think that it was lawyers' language to say we're only waiving what we say we're waiving, and that's the statute of limitations for this period of time. In any other defense, we are not waiving. That's the way I read it. Certainly. I can see where she said this does not waive any other claim or defense that we may otherwise have, period. But she actually refers to a limitations period that has already expired. So she's a lot more specific. She must have had something in mind. Is there anything in the record to show us what she had in mind? No, Your Honor. So you're basically saying these are two ships passing in the night. No meeting of the minds, correct. Your client is talking about a statute of limitations for whatever reason. The other side may think that they're getting a tolling agreement for the contractual limitations. There's never been a meeting of the minds on that. And so we don't have any contract at all. We're going back to Judge Fletcher's court. If indeed that is the case, we don't have a contract. But I do believe, frankly, that we have a tolling of the statute of limitations because the Code of Civil Procedure, which I think applies here, says, I believe, and it's around 360 point something if I remember correctly, that the statute of limitations to be tolled has to be signed by a document in writing by the party to be charged. But we don't have any evidence of anything else. Either in this document or any oral agreement or anything, frankly. Thank you. May I speak briefly, Your Honor, about the standing issue, our cross-appeal? I'll try and do this very briefly. The district court gave very short scripts to this, basically, as Your Honor's know, referring back to his ruling on the motion to dismiss. I don't know why he did that other than perhaps he was ruling in our favor on the contractual limitations period. But if you look at the motion to dismiss, the district court's discussion there doesn't really apply to a summary judgment. And among other things, he was talking about the fact that this is a complex 100-page document, and he was very hesitant at the pleading stage to rule that Mr. Clinton was not a third-party beneficiary. You focused really on the constitutional standing injury, in fact, rather than on the prudential standing. The fatal magnetism of that phrase, we can affirm on any ground. It strikes me that he's clearly an intended beneficiary under California law and, therefore, a third-party beneficiary. And I'll tell you, Your Honor, why I think that's wrong. Two provisions of the contracts. The inducement letter, which is an agreement between our client and Mr. Clinton directly. In paragraph 6, which is 312 of the supplemental excerpts, I hereby acknowledge and agree that you shall not have any obligation to make any payments whatsoever to me, except as specifically provided in paragraph 20, which is not relevant here. It being agreed and understood that I shall look solely to producer for any and all royalties, recording fees, and other monies which may be payable to me in connection with the recording of all masters under the artist's degree. But that's not at all inconsistent with his being a beneficiary of the contract. I'm sorry. That's not at all inconsistent with his being not a party to the contract and not a person entitled to receive money directly. That is not at all inconsistent with his being a beneficiary of the contract. Well, I was going to say two responses, but one response, Your Honor. It is certainly consistent with a waiver of any right to receive money from our client, which was another issue before the district court. But I would also refer the court to page 267 of the supplemental excerpts, which is part of the production agreement. And it's paragraph 14.7, and I believe in rereading our briefs, we did not cite specifically to this paragraph. And I apologize, but I do believe it is very important to the issue. I don't know if Your Honors have it in front of you. Supplemental excerpts 267. And if I can just read for a minute. Company shall not be subject to any costs, fees, charges, or royalties of any nature from any source whatsoever for or in connection with the recording, sale, use, or exploitation of the masters delivered here under, other than payments to union trust funds based on sales of records, except as specifically set forth in this agreement, without limiting the foregoing, except for company's payment of recording costs to the extent provided in paragraph 5, producer, which is PFUNC, shall be solely responsible for and shall pay to artists, to any and all other persons participating in the recording of masters here under, and to any other third parties, any and all royalties and or other compensation which may be payable to them by reason of the exploitation of the masters. Company, that's my client, shall have no obligation whatsoever to pay any royalties or other sums described in the preceding sentence unless company exercises its rights under said letter of inducement, which of course it did not. What was the date of that? That is the production agreement. What was the date of that? I believe it's October 1980, if I remember. And PFUNC became defunct in 1982, right? Correct. And your client knew that, right? There's nothing in the record that indicates whether our client knew it or not. Mr. Brown said that the only royalty that was paid in, I think it was 1992, I don't know if I got that right, was to Mr. Clinton directly. Mr. Brown said he thought. I don't remember anything in the record that indicates that. Was there ever any royalty paid to Mr. Clinton? Oh, yes, Your Honor. In fact, in part the way this whole thing started is my client finally tracked him down. That's in Mr. Clinton's declaration. Paid him $800,000. And as Mr. Clinton says in his declaration, they then proceeded to send materials to him because his wife told him where, told my client where to send it. And previously they did not have a good address for him. So isn't that an acknowledgment that he was the beneficiary of this contract? No, Your Honor. I think it's. They didn't track down PFUNC, they tracked down Mr. Clinton. Mr. Clinton was the President's sole shareholder of PFUNC. Who did they pay the $800,000 to? I don't believe there's anything in the record that indicates that either, Your Honor. I thought you just told me that they paid him $800,000. He was paid, yes. I was probably using loose language there because I don't think there's any record evidence that I recall. It's not like they paid it to PFUNC. Maybe they paid it to me and I endorsed the check over to him, I don't know. Well, I don't see any reason why a voluntary payment could not be made to the President of the company and the sole shareholder of the company. No reason at all other than the acknowledgment that he's the beneficiary of the contract. I would say, Your Honor, that the agreement expressly negates third-party beneficiary, those two provisions. And there's no evidence that the parties intended for Mr. Clinton to be a third-party beneficiary. Thank you very much, Your Honor. Thank you. I think you're out of time. Would you like a minute for rebuttal? Okay. Just a couple points. The formal tolling agreement that Judge Fletcher referred to was a tolling agreement between Mr. Clinton and an entirely different record company. That agreement was entered into in 2005 and is evidence of what lawyers can do, but it was not an agreement between Universal and Mr. Clinton. I don't know if the Court got a chance to review my supplemental authorities letter. We did. What this case is about is equitable estoppel here. Whether there was an agreement or not, clearly, Universal led my client's representatives to believe that the time had been extended. And I think that the recent California appellate case, the Superior Dispatch case, is right on point here. Counsel's reference to paragraph 14.7 of the production agreement is inapplicable here. If you go back to the inducement letter, it talks about barring Mr. Clinton from going after royalties payable to him. In other words, the artist cannot sue the record company for royalties that should come to the artist from the production company. That is all the inducement letter is about. It has nothing to do with third-party beneficiaries, and it has nothing to do with Mr. Clinton stepping into the shoes of his company, T. Fox. Thank you, Your Honor. Thank you. Did that case involve lawyers writing to lawyers? You're talking about the … Superior Dispatch. They're talking about equitable … That was an insurance case, and it just had to do with whether the doctrine of equitable estoppel, evidence code section 623, applied to contractual limitations periods as well as statute of limitations period. That's the main reason the case was cited. Okay. Thank you. Okay. Thank you. Case argued. Thank you very much, Your Honor.
judges: Gettleman, Kozinski, Fletcher W.